IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN OPEN COURT
U.S.D.C. Atlanta

FEB 27 2019

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| WANDA GARNEAUX, | : |
| Plaintiff, | : |
| v. | : |
| KYM VENTURES LLC, d/b/a THE DAIQUIRI FACTORY, a for-profit corporation, | : CIVIL ACTION NO.<br>: 1:16-cv-3012-AT |
| Defendant. | : |

## JURY INSTRUCTIONS

### I. INTRODUCTION

Members of the jury:

It is my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### II. GENERAL INSTRUCTIONS

Your decision must be based only on the evidence presented here. You should remember all of my previous instructions about the prohibition on consulting outside sources or individuals. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the

courtroom. For example, the law often uses words and phrases in special ways, so it is important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

You must not be influenced in any way by either sympathy for or prejudice against anyone. You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The Defendant here is KYM Ventures, LLC. The fact that a limited liability company is involved as a party must not affect your decision in any way. A limited liability company, like all other persons, stands equal before the law and must be dealt with as equal in a court of justice. When a business entity such as a limited liability company is involved, of course, it may act only through people as its employees; and, in general, is responsible under the law for the acts and statements of its officers, employees, and agents that are made within the scope of their duties for the company.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and is not binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law,

you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters. In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.

There is no legal difference in the weight you may give to either direct or circumstantial evidence.

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point does not necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?
- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?
- Did the witness seem to have a good memory?
- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
- Did the witness appear to understand the questions clearly and answer them directly?
- Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake does not mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

The parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case. In this case, the parties have stipulated to the following facts:

1. The Daiquiri Factory is a for-profit restaurant owned and controlled by Kym Ventures, LLC, a limited liability company doing business in the State of Georgia.

2. The Daiquiri Factory is a place of public accommodation within the meaning of Title III of the Americans with Disabilities Act (ADA).

### III. BURDEN OF PROOF

In this case it is the responsibility of the Plaintiff, Wanda Garneaux, to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Ms. Garneaux's claim is more likely true than not true, or in other words that the scale of evidence tips in the Plaintiff's favor and not in the Defendant's.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find for the Defendant KYM Ventures as to that claim. When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

IV.  **AMERICANS WITH DISABILITIES ACT**

In this case, the Plaintiff, Wanda Garneaux, claims that Defendant discriminated against her by denying Plaintiff entry into The Daiquiri Factory with her service animal under Title III of the Americans with Disabilities Act, also known by the acronym the "ADA."

Defendant denies Ms. Garneaux's claim.

Under Title III of the ADA, it is unlawful for a place of public accommodation such as a restaurant to discriminate against individuals with disabilities.

To succeed on her claim, Ms. Garneaux must prove all the following facts by a preponderance of the evidence:

First:   That she is an individual with a disability;

Second:  That Defendant is the owner or operator of a place of public accommodation; and

Third:   That Defendant discriminated against the Plaintiff by denying her full and equal enjoyment of goods, services, facilities or privileges offered by Defendant on the basis of her disability.

**Definition of "Disability"**

Ms. Garneaux contends she is disabled because of her Post Traumatic Stress Disorder (referred to by the acronym "PTSD"), Lupus, and other related conditions.

6

Plaintiff must first prove by a preponderance of the evidence that she has a disability. A "disability" is a physical or mental impairment that substantially limits one or more major life activities.

Plaintiff also can establish that she has a disability by proving that she has a record of a disability. Plaintiff has a record of a disability if she has a history of having a physical or mental impairment that substantially limits one or more major life activities.

A "physical impairment" is a condition that prevents the body from functioning normally.

A "mental impairment" is a condition that prevents the mind from functioning normally.

"Major life activities" include, but are not limited to, activities such as caring for oneself, performing manual tasks, sleeping, learning, reading, concentrating, thinking, communicating, and working, as well as a variety of other physical activities that relate to a person with physical disabilities, such as walking, standing, lifting, bending, speaking, seeing, hearing, breathing, eating, etc. Major life activities also include functions of the immune system; normal cell growth; and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

Whether an activity is a major life activity is not determined by reference to whether it is of central importance to daily life.

An impairment is a disability within the meaning of the public accommodation section of the ADA if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. An impairment that substantially limits one major life activity is a disability even if it does not limit any other major life activity. If the Plaintiff's impairment is not always a problem but flares up from time to time, it can be a disability if it would substantially limit a major life activity when active. "Substantially limits" is not meant to be a demanding standard under the public accommodation section (Title III) of the ADA.

The public accommodation section of the ADA recognizes that Post Traumatic Stress Disorder, at a minimum, substantially limits brain function.

To decide whether Ms. Garneaux's impairments substantially limits one or more of her major life activities, it does not matter that Plaintiff's conditions can be corrected or lessened by the use of medication or other treatment. The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population generally does not require scientific, medical, or statistical evidence.

The primary inquiry under the public accommodation section of the ADA should be whether a place of public accommodation has complied with its obligations and whether discrimination has occurred – not the extent to which an

individual's impairment substantially limits a major life activity. I will discuss in a moment what constitutes discrimination under Title III of the ADA.

### Place of Public Accommodation

The second element requires that the Plaintiff prove by a preponderance of the evidence that Defendant is the owner or operator of a place of public accommodation. Here, Plaintiff and Defendant have stipulated that The Daiquiri Factory is a place of public accommodation within the meaning of Title III of the Americans with Disabilities Act (ADA). The Plaintiff and Defendant have also stipulated that Defendant KYM Ventures, LLC owned and operated The Daiquiri Factory, a for-profit restaurant business in the State of Georgia. You must treat these facts as proved for this case.

### Discrimination under Title III

Finally, Plaintiff is required to prove by a preponderance of the evidence that Defendant discriminated against her by denying her entry into The Daiquiri Factory with her service dog.

The ADA requires places of public accommodation to allow individuals with disabilities to be accompanied by their service animals in all areas where members of the public, clients, customers, patrons, or invitees are allowed to go.

A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. Specifically, a place of public accommodation is required to modify its

policies, practices, or procedures to permit the use of a service animal by an individual with a disability.

The ADA defines discrimination under Title III as a failure by a public accommodation to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

To prevail on the third element, Plaintiff must prove by a preponderance of the evidence that Defendant discriminated against her within the meaning of Title III of the ADA by refusing to allow her to enter the restaurant with her dog as an accommodation of Plaintiff's disability. This in turn requires Plaintiff to prove the dog is a "service animal" within the meaning of the ADA.

### Definition of Service Animal

A "service animal" is defined as any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of

allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. Another example of such work includes calming a person with Post Traumatic Stress Disorder (PTSD) during an anxiety attack. But the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition. A service animal as defined under the ADA is not merely a pet.

A place of public accommodation may ask an individual with a disability to remove a service animal from the premises only if:

(i) The animal is out of control and the animal's handler does not take effective action to control it; or

(ii) The animal is not housebroken.

Under the ADA, service animals must be harnessed, leashed, or tethered, unless these devices interfere with the service animal's work or the individual's disability prevents using these devices. However, the ADA does not require service animals to wear a vest, ID tag, or specific harness.

### Permissible Inquiries by Places of Public Accommodation Into the Purpose and Function of the Service Animal

Places of public accommodation are permitted to conduct a limited inquiry to ascertain whether an individual has the right to be accompanied by a service animal. A place of public accommodation is not permitted to ask about the nature

or extent of a person's disability. It is generally permissible, however, for a place of public accommodation to make two inquiries to determine whether the animal qualifies as a service animal. A place of public accommodation may ask: (1) if the animal is required because of a disability, and (2) what work or task the animal has been trained to perform.

A place of public accommodation is not permitted to require medical documentation, or identification such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.

A place of public accommodation may not make these inquiries about a service animal when it is readily apparent that an animal is trained to do work or perform tasks for an individual with a disability (for example, the animal is observed guiding an individual who is blind or has low vision, pulling a person's wheelchair, or providing assistance with stability or balance to an individual with an observable mobility disability).

V.   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff contends that Defendant's conduct in denying her entry into The Daiquiri Factory with her service dog resulted in intentional infliction of emotional distress.

To recover on a claim of intentional infliction of emotional distress, Plaintiff must prove by a preponderance of the evidence that:

First:   The Defendants' conduct was intentional or reckless;

Second:   The Defendants' conduct was extreme and outrageous;

12

>Third:   The Defendant's conduct caused the Plaintiff to suffer emotional distress; and
>
>Fourth:   The emotional distress was severe.

A reckless or wanton disregard of the rights of others may indicate an intention to inflict injury. Evidence of a Defendant's malicious purpose or a wanton disregard of a Plaintiff's rights may be considered in evaluating whether the Defendant's behavior can reasonably be characterized as outrageous or egregious.

The Defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Conduct sufficient to support a claim for intentional infliction of emotional distress includes the willful and wanton use of abusive or obscene language that is severely emotionally upsetting to the Plaintiff. The conduct must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress.

Mere tasteless, rude or insulting conduct, indignities, threats, annoyances, petty oppressions, or other trivialities will not give rise to such a claim. A Plaintiff is necessarily expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. The law does not compensate every case where someone's feelings are hurt.

Some factors to consider in determining whether conduct is sufficiently extreme and outrageous to warrant recovery for intentional infliction of emotional

distress include the Defendant's awareness of the Plaintiff's particular susceptibility and the severity of the resulting emotional distress.

Emotional distress includes highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. The emotional distress inflicted must be so severe that no reasonable person could be expected to endure it. The emotional distress must be reasonable and justified under the circumstances, and the Defendant may not be held liable where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the Defendant has knowledge.

If you find that Ms. Garneaux has proved each of the elements she must prove, you must decide the issue of her compensatory damages for emotional distress.

In considering the issue of the Plaintiff's damages, you should determine what amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for the Plaintiff's damages, no more and no less. Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize the Defendant. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

To determine whether and how much Ms. Garneaux should recover for emotional pain and mental anguish, you may consider both the mental and

physical aspects of injury – tangible and intangible. Ms. Garneaux does not have to introduce evidence of a monetary value for intangible things like mental anguish. You must determine what amount will fairly compensate Ms. Garneaux for those claims. There is no exact standard to apply, but the measure of damages, as determined by the enlightened conscience of impartial jurors taking into consideration all the facts and circumstances of the case, should be fair in light of the evidence.

## VI. Punitive Damages

Plaintiff also seeks punitive damages against the Defendant in connection with her claim for intentional infliction of emotional distress.

Punitive damages are not allowed in cases based solely on a claim for negligent conduct. However, in tort actions such as this, there may be aggravating circumstances that may warrant the awarding or imposing of additional damages called punitive damages.

Punitive damages, when authorized, are awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant.

Before you may award punitive damages against the Defendant, Plaintiff must prove that Defendant's actions showed willful misconduct, malice, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to the consequences.

An act is wilfully done if done voluntarily and intentionally and with the specific intent to commit such an act.

An act is wantonly done if done in careless disregard of, or indifference to, the rights of the injured party.

An act is maliciously done, if prompted or accompanied by ill-will or such gross indifference to the rights of others as to amount to a wilful act done intentionally without just cause or excuse.

That entire want of care which would raise the presumption of a conscious indifference to consequences of one's actions relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights.

Plaintiff must prove that the Defendant is liable for punitive damages by a higher standard than that for proof of other damages; that is, by clear and convincing evidence.

Clear and convincing evidence is a different and higher burden of proof than a mere preponderance of the evidence. Clear and convincing evidence is defined as evidence that will cause the jury to firmly believe each essential element of the claim for punitive damages to a high degree of probability.

If Plaintiff fails to prove, by clear and convincing evidence, that the Defendant was guilty of willful misconduct, malice, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to the consequences, then you would not be authorized to award punitive damages against the Defendant.

Mere negligence, although amounting to gross negligence, will not alone authorize an award of punitive damages.

In your verdict, you should specify whether you do or do not decide that the plaintiffs should receive punitive damages and the amount of such damages.

The measure of such damages is your enlightened conscience as an impartial jury. In considering the amount of punitive damages, you may consider the following factors:

1) the nature and egregiousness (reprehensibility) of the defendant's conduct;

2) the extent and duration of the defendant's wrongdoing and the likelihood of its recurrence;

3) the intent of the defendant in committing the wrong;

4) the profitability of the defendant's wrongdoing;

5) the amount of actual damages awarded; and

6) the financial circumstances, that is, the financial condition and or the net worth of the defendant.

Any award you make should be both reasonable and just in light of your previous award of damages, the conduct and circumstances of the Defendant, and the purpose of punitive damages. It is your duty to consider the facts objectively without favor, affection, or sympathy to either party.

## VII. Duty to Deliberate

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

## VIII. Election of Foreperson Explanation of Verdict Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court. A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you have all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you will return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how

many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.